1

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

- - - - - - - - - - - - - - - -X
UNITED STATES OF AMERICA,      :  21-cr-00007-WES-LDA
                               :
                               :
                               :
                               :
                               :
  vs.                          :  United States Courthouse
                               :  Providence, Rhode Island
                               :
                               :
                               :
JUAN C. FUNES,                 :  Tuesday, August 16, 2022
        Defendant.             :
                               :
- - - - - - - - - - - - - - - -X

TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
BEFORE THE HONORABLE WILLIAM E. SMITH
UNITED STATES DISTRICT COURT JUDGE
COURTROOM 1

A P P E A R A N C E S:

For the Government:   MILIND M. SHAH, AUSA
                      U.S. Attorney's Office
                      50 Kennedy Plaza
                      Providence, RI  02903

For the Defendant:    JOHN L. CALCAGNI, III, ESQ.
                      Law Office of John L. Calcagni, III,
                      Inc.
                      72 Clifford Street, Suite 300
                      Providence, RI  02903

Court Reporter:   Lisa Schwam, CRR-RPR-RMR
                  One Exchange Terrace
                  Providence, RI  02903

1   (In open court)

2   16 AUGUST 2022

3   (Time noted; 10:11 a.m.)

4           THE COURT:  Good morning.  We're here in the

5   matter of the United States versus Juan Funes.  We're

6   here for sentencing this morning.  Let's have counsel

7   identify themselves for the record, please.

8           MR. SHAH:  Good morning.  Milind Shah for the

9   United States.

10          MR. CALCAGNI:  Good morning.  John Calcagni for

11  Mr. Funes.

12          THE COURT:  Okay.  Thank you very much.  I have

13  the presentence investigation report that was prepared

14  by the Office of Probation in this matter.

15          Mr. Calcagni, if you would confirm on the record

16  for me that you've reviewed the presentence report with

17  your client and that you've been able to answer all of

18  his questions.

19          MR. CALCAGNI:  Yes, I have, your Honor.

20          THE COURT:  Are there any objections to the

21  presentence report?

22          MR. CALCAGNI:  No.

23          THE COURT:  Any objections from the government?

24          MR. SHAH:  None from the government, your Honor.

25          THE COURT:  All right then.  I'll accept the

1  presentence report as it's currently drafted and
2  utilize it for sentencing this morning.  I'm going to
3  set forth on the record the advisory guideline
4  calculations as they're detailed in the presentence
5  report.
6          We begin at paragraph 21.  The base offense
7  level for possession of child pornography is 18.  There
8  are a number of upward adjustments.  The first one is
9  because the material involved a prepubescent minor or a
10 minor who had not attained the age of 12 years old.
11 That's a two-point upward adjustment.  Another
12 two-point upward adjustment because the offense
13 involved the use of a computer or interactive device.
14 And then a five-point upward adjustment because the
15 offense involved in excess of 600 images.  That yields
16 an adjusted offense level of 27.  The defendant
17 receives a three-point downward adjustment for
18 acceptance of responsibility.  So his total offense
19 level is 24.
20         The defendant has no criminal history so he
21 falls into Criminal History Category of I.  At offense
22 level 24 and Criminal History Category of I, the
23 defendant's advisory guideline range is 51 to 63 months
24 of incarceration.  And I'll hear first from the
25 government with respect to the appropriate sentence.

1       MR. SHAH:  May I take my mask off, your Honor?
2       THE COURT:  Yes, you may.
3       MR. SHAH:  Your Honor, the government requests
4  that the Court take the joint recommendation of the
5  parties of 36 months.  There is a recognition between
6  the parties and by the government that the guidelines
7  in some manner are outdated with respect to these sorts
8  of offenses.  However, in arriving at 36 months, the
9  government takes into account that the number of images
10 has some pertinence because it speaks to the level of
11 harm caused.
12      Furthermore, the government notes that the age
13 of the victims depicted in the images has some
14 relevance; there is further harm caused the younger the
15 victims are.  Keeping those two factors in mind, the
16 government arrives at a 36-month recommendation for the
17 Court.
18      I'd like to discuss the 3553 factors as they
19 relate to this matter.  We're talking about child
20 pornography and what that specifically means is we are
21 talking about documentation of the rape and sexual
22 abuse of minors.  That's what child pornography is.
23 The possession of these sorts of images is serious
24 because it creates a market for further victimization
25 of children.  Creation of a market for these sorts of

1  images feeds creation of more of these sorts of images.

2  That's been recognized by the Supreme Court and
3  it's been recognized by the First Circuit.  It forms a
4  consideration in determining how serious this offense
5  is.  With this offense, Mr. Funes possessed 2,300 child
6  pornography images.

7  Finally, a factor that shapes considerations
8  under 3553 in this matter is these are not victimless
9  crimes.  What we understand about people who have been
10  victimized by child pornography, the people who are
11  depicted in these images, the trauma associated with
12  the knowledge that people are viewing these images is a
13  lifelong burden for them, so they're not victimless
14  crimes.  They create demand for future victimization of
15  others.  And the material we're talking about is about
16  the -- is about documenting and fetishising the trauma
17  of children.

18  It's for those reasons we think it's a serious
19  offense.  It's for those reasons we think that this
20  defendant's possession of those types of images is
21  serious and worthy of 36 months of incarceration.

22  THE COURT:  All right.  Thank you, Mr. Shah.

23  MR. SHAH:  Thank you, your Honor.

24  THE COURT:  Mr. Calcagni.

25  MR. CALCAGNI:  Your Honor, I can't disagree with

1  much of what Mr. Shah had to say, but I just want to
2  remind the Court that this defendant has strong
3  rehabilitative potential.  I've been working with Mr.
4  Funes now for more than two years.  I'm sure the Court
5  read my materials and talked about the procedural
6  history of the case and how this matter was pending in
7  the state court; and it was sort of on the eve of
8  disposition, if you will, and we learned that the U.S.
9  Attorney's Office assumed prosecution and that's what
10 brings us here.
11         All the while I've been representing Mr. Funes,
12 he's always worked two jobs.  He has two jobs til this
13 very day.  He has spent his time constructively saving
14 his money to pay what is inevitably going to be a
15 substantial special assessment which he's prepared to
16 do today.  He has overcome significant adversity in his
17 own life.  This Court is no stranger to his father who
18 has been a defendant here, also cited in both the
19 presentence report and my particular memo.
20         And you'll notice there's no one in the audience
21 today.  And you'll also notice from my sentencing memo
22 that it didn't include the customary statements of
23 support and attachments.  And that's because Mr. Funes
24 is deeply, deeply ashamed and embarrassed by his
25 conduct which brings him before this Court.  He didn't

```
 1      have the courage to reach out to folks and ask them to
 2      write a statement of support because he is so disgusted
 3      with himself for his curiosity and deliberate
 4      involvement in child pornography offenses.
 5              There is no evidence out there to suggest that
 6      he suffers from pedophilia or has the potential to
 7      offend against any real children.  He's 24 years old,
 8      no criminal history whatsoever and, in my professional
 9      opinion, has already learned a pretty hard lesson from
10      this experience.  Sending him to jail for a period of
11      time that exceeds 36 months is just not necessary.
12      Thank you.
13              THE COURT:  All right.  Thank you, Mr. Calcagni.
14              Mr. Funes, would you like to say anything before
15      I impose the sentence?
16              THE DEFENDANT:  Yeah, I would, your Honor.
17              MR. CALCAGNI:  Take your mask off.  Make your
18      comments.
19              THE DEFENDANT:  Yeah.  I just wanted to say that
20      I -- you know, I'm as ashamed as ever for why I'm here
21      today in court for these charges.  And it's not in my
22      character.  And going forward, you know, it's something
23      I'm just going to hold with great shame but, you know,
24      that I have been and will continue to overcome.  So
25      that's all I got.
```

1    THE COURT: Okay. Tell me a little bit about
2    your current life, like where you work and what you do.
3    THE DEFENDANT: Well, currently, I work at a
4    warehouse in Foxboro. It's an eight-hour job five days
5    a week. And then --
6    MR. CALCAGNI: Tell him your position, your
7    duties there.
8    THE DEFENDANT: Well, currently, it's a -- I'm
9    on a temporary leave position. Sort of like a feel-out
10   phase where they just see during the very busy time of
11   the year, they put me in a position to lead a specific
12   portion of the warehouse operations. It comes with
13   additional pay and all that, so it's a pretty decent
14   work environment.
15   And then at night between the hours of like 5:00
16   and 11:00, I work for a cleaning service that cleans
17   offices at an executive park in Warwick. So both
18   pretty decent jobs.
19   THE COURT: How did you get involved in this?
20   THE DEFENDANT: Initially, I was -- my dad was
21   seeking work.
22   THE COURT: No, no. I mean in this crime.
23   THE DEFENDANT: Oh, in the crime? Okay.
24   So initially, it was -- I was curious what kind
25   of -- well, it started off more so in, like, middle

1   school years where I was curious what people my age at
2   the time where I was getting into, like, dabbling into
3   sexuality and all that.  And initially, it wasn't
4   anything particularly pornographic until I stumbled
5   onto a website that was extremely explicit and from
6   then on it was just downloading and viewing.
7           THE COURT:  So this went on for a period of
8   years?  You mentioned starting in middle school, but
9   then obviously you're much older than that now.
10          THE DEFENDANT:  Yeah.  So I didn't find anything
11  explicit in nature until a few years back; I think at
12  around my senior year of high school.  And then it was
13  just -- it was a sort of, I suppose, a very -- it was a
14  very -- what's the word?  It just wasn't the -- it was
15  a very devious way to just explore the taboo side of
16  pornography, I guess.  It was just something that I
17  continued on afterwards.
18          THE COURT:  So you must have understood as you
19  were going down this road that you were into some stuff
20  that was not only, you know, taboo, but illegal.  And
21  I'm just curious about why someone like you
22  would -- you know, once you find your way into that,
23  that you'd choose to keep going.  You seem
24  like -- well, I don't know.  It just seems odd.
25              What's the thought process?  You must have known

1   you were into some bad stuff, right?
2               THE DEFENDANT:  Yeah.  So I really kept
3   the -- what I dabbled -- well, what I explored on the
4   internet, I kept separate from my day-to-day life, life
5   and relationships.  So there was a sort of disconnect
6   between what I would -- how I would be with friends and
7   family and what I would continue to view in private on
8   the internet.  And I guess that disconnect allowed me
9   to rationalize continuing to view it.
10              THE COURT:  Now, you graduated from Hope High
11  School, right?
12              THE DEFENDANT:  Yeah.  Yes, your Honor.
13              THE COURT:  And then you went to CCRI for a bit.
14              THE DEFENDANT:  I did.  For a summer.
15              THE COURT:  What happened there?  Why didn't you
16  keep on with that?
17              THE DEFENDANT:  Well, I took two classes, art
18  and business.  And while I enjoyed art and I passed the
19  class, I did not like business and I didn't complete
20  that.  Well, I completed it, but I didn't pass.  And I
21  didn't really see an avenue for work in an art field.
22  It was more so like a hobby in the way I saw it, so I
23  figured I should just start working and making money as
24  opposed to continuing with a career in that.
25              THE COURT:  And you live with your grandmother;

```
 1     is that right?
 2             THE DEFENDANT:  Yes, your Honor.
 3             THE COURT:  So basically -- I mean, you're in
 4     kind of an odd situation -- it's not odd, it's just
 5     unusual -- but that you have $30,000 in a bank account.
 6     You're pretty young.
 7             So I take it your grandmother sort of supports
 8     you and you just save the money you're earning?
 9             THE DEFENDANT:  No.  I --
10             THE COURT:  I'm not being critical.  I'm just
11     trying to figure it out.
12             THE DEFENDANT:  No, sir, your Honor.  I do
13     support, but I don't have any expenses for any, like,
14     recreational.  I don't spend a lot of money on
15     recreational stuff.  So it just added up over time.
16             THE COURT:  So you've got two good jobs, it
17     sounds like, so you're making pretty good money.  What
18     is your -- I mean, what's your long-term goal in life?
19     Just stick with these jobs?  Are you going to go back
20     to school?  Are you going to get a trade?
21             What are you thinking about?  You're not going
22     to live with your grandmother forever.
23             THE DEFENDANT:  No, sir.  Well, currently, I'm
24     living with my dad, my uncle and very recently my
25     brother.  But I figured I'd just -- I have -- because
```

1   of the support that my grandmother does provide, I
2   thought I could just stay with that since it was
3   comfortable and it works with the work that I do, with
4   the amount of work that I do and the support that I
5   have at home.
6           THE COURT:  What works?  I didn't understand the
7   first part of that.  What were you saying?
8           THE DEFENDANT:  Well, living with my grandmother
9   is --
10          THE COURT:  You're saying that works, but I'm
11  asking you about your long-term career and life goals.
12          MR. CALCAGNI:  What do you want to do?
13          THE DEFENDANT:  Yeah.  I like working, so I
14  thought I'd just continue with that.
15          THE COURT:  But at this warehouse?  Is that what
16  you're interested in or what?
17          THE DEFENDANT:  I'm not entirely sure.  I would
18  like to continue with the warehouse work, but I know
19  opportunities pop up in the future.  I stick with what
20  I -- I stick with the job because I enjoy it, but I
21  hold out on the possibility of other opportunities if
22  they present themselves and they seem, you know, like a
23  better fit.
24          But working long term is -- I like working with
25  my hands, manual labor and all that, so that's what I

```
 1    enjoy.
 2            THE COURT:  Have you had any mental health
 3    treatment?
 4            THE DEFENDANT:  Currently, I'm seeking treatment
 5    at a CODAC facility.
 6            THE COURT:  What kind of treatment is that?
 7            THE DEFENDANT:  It's -- I think it's general
 8    therapy, mental health therapy.
 9            THE COURT:  And what have you learned from that?
10            THE DEFENDANT:  Well, I've learned -- it's a
11    really good way to sort of vent my thoughts and just
12    get feedback.  I did learn a lot on the process of the
13    courts surprisingly because -- between the two
14    therapists that I had, psychologists, and I think that
15    prepared me well with coming here and working with
16    it -- working with the fact that these charges had been
17    pending for the last two-plus years and just
18    maintaining a good attitude with that in mind.
19            THE COURT:  Okay.  All right.
20            Well, look, I'm going to take a little recess.
21    I want to talk to the lawyers here and the probation
22    officer, so I'll meet you all in the conference room
23    over here.  And we'll take a bit of a recess, and then
24    I'll come back, okay.  So just bring counsel.
25            (Time noted; 10:31 a.m.)
```

1
2                         **CERTIFICATION**
3   I certify that the foregoing is a correct transcript from the
4   record of proceedings in the above-entitled matter.
5
6   *[signature: Lisa Schwam]*
7   Official Court Reporter                    November 29, 2022
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25